IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MIKEL HAMMONDS, #177646        )
                              )
            Plaintiff,         )
                              )
    v.                        )        CIVIL NO. 2:15-cv-6-WKW
                              )
WARDEN JONES, et al.,          )
                              )
            Defendants.        )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

Plaintiff Mikel Hammonds ("Plaintiff") is an inmate of the Alabama
Department of Corrections ("ADOC"), currently incarcerated at Fountain
Correctional Facility. He brings this action pursuant to 42 U.S.C. § 1983, asserting
that he was subjected to cruel and unusual conditions of confinement while he was
an inmate in Unit C-1 of the Restrictive Privilege Dorm at Easterling Correctional
Facility ("Easterling").[1] Doc. 1-1 at 3; Doc. 25 at 3-5. Plaintiff seeks declaratory and
injunctive relief as well as damages. Doc. 1-1 at 5; Doc. 25 at 10-11.

Plaintiff sues the defendants in their individual and official capacities, and he
names as defendants former Commissioner Kim Thomas, Warden Karla Jones,

---

[1] The Court dismissed other claims Plaintiff raised. Docs. 29, 46. The Court directed Plaintiff to amend and granted
his motion to amend. Docs. 23-26.

Warden Derrick Carter, Warden Kenneth Sconyers, Captain Willie Bryant, Lieutenant Larry Peavy, Sergeant Dominic Jones, and Sergeant Kevin Teal (collectively "Defendants"). Doc. 1 at 1. Plaintiff also sues Warden Carter Davenport as a Defendant, though Plaintiff does not clarify whether Davenport is sued in his official or individual capacity. Docs. 24, 26.[2]

Pursuant to the orders of this court, the remaining Defendants filed answers, special reports, supplemental special reports, and evidentiary materials addressing the claims for relief raised in the complaint. Docs. 40, 44, 45, 48, 50, 71, 73. In their various reports, Defendants assert, among other things, that Plaintiff fails to state a claim for relief, respondeat superior is not a basis for relief, there is no merit to Plaintiff's claims, they are entitled to Eleventh Amendment immunity and qualified immunity, and Plaintiff cannot recover damages for mental or emotional injury because he does not allege a physical injury as required by 42 U.S.C. § 1997e(e). Docs. 40 at 3-5, 45 at 2.

The court directed Plaintiff to respond to Defendants' reports. Docs. 52, 67. The court advised Plaintiff it would, in the future, treat Defendants' report and

---

[2] Davenport has never been served, and no one has filed an appearance on Davenport's behalf. The court has a responsibility to "issue and serve all process" for Plaintiff, who is proceeding in forma pauperis, and therefore the Court does not fault Plaintiff for not serving Davenport timely. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(m). The Attorney General has not objected to Davenport as a Defendant, and it is clear he had notice of Plaintiff's claim, as shown by Plaintiff's motion, the order granting it, and Davenport's affidavits. Docs. 24, 26, 48-1, 50-1. For the reasons discussed, *infra*, however, Plaintiff's Eighth Amendment claim also fails as to Davenport, therefore the suit against Davenport is due to be dismissed.

Plaintiff's response as a dispositive motion and response. Doc. 52 at 2. The court advised Plaintiff that his response should be supported by affidavits or statements made under penalty of perjury or appropriate other evidentiary materials, and it advised him of the proper manner in which to respond to the reports. *Id.* at 2-3. Plaintiff filed one response, Doc. 55, and Plaintiff did not respond to Defendants' latest supplemental report.

This case is now pending before the court on Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56. Upon consideration of the motion, Plaintiff's response, and the evidentiary materials filed in support of and in opposition to the motions, the court concludes that Defendants' motion for summary judgment is due to be granted.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to

former Fed. R. Civ. P. 56 omitted; "issue" altered to "dispute" to reflect the stylistic change in the current rule). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations added). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed-- show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI*

*Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (court considers facts pled in a plaintiff's sworn complaint when considering his opposition to summary judgment"). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"). Only disputes involving material facts are relevant, and what is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the court, a pro se litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material fact so as to preclude summary judgment. *See Matsushita*, 475 U.S. at 587.

## III. DISCUSSION

### A. Declaratory and Injunctive Relief

Plaintiff's requests for declaratory and injunctive relief against Defendants are due to be dismissed as moot because Plaintiff is no longer incarcerated at Easterling. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1342 n.1 (11th Cir. 2016) ("since

Mr. Jacoby is no longer an inmate at the Baldwin jail, his claims for injunctive relief are moot"); *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (case or controversy requires "continuing present injury or real and immediate threat of repeated injury") (quotation marks and citation omitted). Consequently, Plaintiff's requests for equitable relief are due to be dismissed as moot.

### B. Suit Against Defendants in Their Official Capacities

Plaintiffs seeks money damages against Defendants, who were state actors during the time relevant to the complaint, and he sues them in their official capacities. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). State officials may not be sued in their official capacity for money damages unless the state has waived its Eleventh Amendment immunity or unless Congress has abrogated the state's immunity, and neither has occurred in this case. *See Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996) (discussing abrogation by Congress); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984) (discussing Eleventh Amendment immunity); *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (Alabama has not waived Eleventh Amendment immunity)). In light of the foregoing, Defendants are entitled to sovereign immunity under the

Eleventh Amendment for Plaintiff's claims seeking monetary damages from them in their official capacities.

## C. 42 U.S.C. § 1997e(e) and Damages

Defendants also assert that Plaintiff does not allege "a prior showing of physical injury;" consequently, he cannot obtain compensatory damages "for mental or emotional injury." *See* 42 U.S.C. § 1997e(e);[3] Doc. 71 at 6. Section 1997e(e) is a limit on relief, consequently Plaintiff cannot obtain punitive damages and compensatory damages for simply mental or emotional injury. *See Al-Amin v. Smith*, 637 F.3d 1192, 1198 (11th Cir. 2011) (holding prior case law "forecloses the punitive damage relief sought by Al-Amin, given that his constitutional claim does not meet § 1997e(e)'s physical injury requirement"). Nevertheless, if Plaintiff can show a physical injury, § 1997e(e) does not bar relief. In addition, to the extent Plaintiff requests nominal damages,[4] they "'are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages.'" *Williams v. Brown*, 347

---

[3] Section 1997e(e) provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." Plaintiff does not assert, and the record does not support, a finding that this case involves a sexual act as defined in 18 U.S.C. § 2246.

[4] Even though Plaintiff did not specifically request nominal damages on his original claims, the court has liberally construed the pro se pleadings to include a request for them. Doc. 1-1 at 6 (requesting "[a]ny additional relief this Court deems just, proper, and equitable"); s*ee Magwood v. Sec'y, Florida Dep't of Corr.*, 652 F. App'x 841, 845 (11th Cir. 2016) (citing *Hughes v. Lott*, 350 F.3d 1157, 1162-63 (11th Cir. 2003)); *cf. Slicker v. Johnson*, 215 F.3d 1225, 1231-32 (11th Cir. 2000) (if nonprisoner plaintiff was unable to demonstrate that he suffered an actual injury, "under controlling case law the district court erred in not allowing [plaintiff] to seek nominal damages").

F. App'x 429, 436 (11th Cir. 2009) (quoting *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003)); *see also Brooks v. Warden*, 800 F.3d 1295, 1307-08 (11th Cir. 2015) (holding that nothing in § 1997e(e) prevents a prisoner from recovering nominal damages for a constitutional violation without a showing of physical injury); *Hughes*, 350 F.3d at 1162 ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages.").

### D. Eighth Amendment Claim and Qualified Immunity

Plaintiff asserts that while he was in C-1 Restricted Privileges Dorm at Easterling, he was denied basic human necessities in violation of the Eighth Amendment. Doc. 1-1 at 3; Doc. 25 at 3-5. He states he wrote a complaint to the Wardens and Captain and Commissioner but received no response. Doc. 25-1 at 1. Plaintiff avers the unit was "a fire, health, and safety hazard" because his cell was locked with an electronic keypad and also a chain. Doc. 25 at 4. He avers he was "deprived the basic human needs such as proper hy[gi]ene, (deodorant, lotion, shampoo, soap grease,) stationery items, proper exercise, proper air circulation, basic and adequate stuff that helps keep the mind off negative things . . . an unsafe environment . . . a congested, aggravated, frustrated, and hostile environment, that places the plaintiff and other inmates at risk of getting into trouble, or hurting, or

getting hurt; this caused and continues to cause mental and emotional injury." Doc.

25 at 4-5. Plaintiff asserts he was placed in

> extrem[e]ly small 2-man cells where the bed is 2-feet away from the
> toilet, so when someone in the cell uses the toilet, the other is forced to
> smell the others bowels which is really inhumane. And the toilet only
> has two (2) flushes, unless there is someone there to reset it if not we
> have to wait until it resets itself (15-mins), or until someone comes
> around. It is very inhumane to smell another persons waste in such
> manner. It is also inhumane to smell another persons or your own body
> od[o]r for such a long period of time. It is unsafe & inhumane to be
> placed in a congested cell or dorm.

Doc. 25 at 5. In his sworn declaration attached to the amended complaint, Plaintiff

complains about due process in his placement in C-1 as well as the conditions, and

he states he wrote a complaint to the wardens, captain, and commissioner. Doc. 25-

1 at 1. He states he told Karla Jones, Carter, and Bryant they were violating his

constitutional rights, and they said, "well, 'sue me.'" Doc. 25-1 at 1. Plaintiff does

not state what constitutional rights or particular facts he raised to them. *Id.*

Plaintiff submitted a letter dated April 28, 2015, and marked April 30, 2015,

to Warden Davenport, in which Plaintiff complained about the conditions in C-1.

Doc. 35-1 at 1-4. In the letter, Plaintiff does not identify any of the other Defendants

by name or state that he alerted them about the conditions in Restricted Privilege

Dorm C-1 at Easterling. *Id.* In the portion of the letter addressing conditions, Plaintiff

states, "We are not allowed to buy personal hy[gi]ene and writing stationery that is

allowed at other institutions when inmates is on restriction. We are being deprived of basic human needs. Our rights are being violated by being placed in extrem[e]ly overly restricted conditions and inhumane and unsafe conditions." Doc. 35-1 at 2. Plaintiff also states he was denied exercise. Doc. 35-1 at 4. Plaintiff does not otherwise elaborate in the letter on what particular conditions are inhumane or unsafe.[5] *Id.*

For the time relevant to the complaint, Plaintiff was in Restrictive Privilege Dorm C-1 on the following dates: April 23, 2014 to April 24, 2014 (2 days); December 1, 2014, to December 14, 2014 (15 days); December 23, 2014, to December 30, 2014 (8 days); February 10, 2015, to February 28, 2015 (19 days); March 30, 2015, to April 13, 2015 (15 days); April 19, 2015, to May 8, 2015 (20 days); June 1, 2015, to June 2, 2015 (2 days); June 23, 2016, to July 1, 2016 (9 days); September 5, 2016, to September 22, 2016 (18 days); and October 23, 2016, to

---

[5] In his response to Defendants' report, Plaintiff states, among other things, that in the Restrictive Privilege Dorm he was "exposed to inhumane conditions, such as cold, unventilated, smelly, and unprotected environment," and he states the conditions included violence among inmates. Doc. 55 at 4-5. Plaintiff states his statements are "true and correct," Doc. 55 at 6, but the statements are not in an affidavit, not sworn under penalty of perjury, and do not contain a notary public's stamp or seal. An affidavit is "[a] voluntary declaration of facts written down and sworn to by a declarant, usu. before an officer authorized to administer oaths" such as a notary public. Black's Law Dictionary 62 (10th ed. 2014). A declaration that is signed "under penalty of perjury" is sufficient to constitute evidence for purposes of a motion for summary judgment. *See* 28 U.S.C. § 1746; *see also Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555 at *2 (11th Cir. 2007) (per curiam) ("unsworn statements, even from pro se parties, should not be 'consider[ed] in determining the propriety of summary judgment'") (alteration in original) (quoting *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (per curiam)); *see Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981). The court cautioned Plaintiff that he could not rely on unsworn statements or pleadings. Doc. No. 52. Plaintiff's unsworn statements will not be considered in determining Defendants' dispositive motion.

November 18, 2016 (27 days). Doc. 71-1. Plaintiff has not been in "restricted housing (segregation) since June 1, 2015 . . . In other words, Hammonds has been housed in some form of general or restrictive privilege population since June 2, 2015. Inmate Hammonds was removed from the Restrictive Privileges dorm at Easterling on November 18, 2016, and placed in a population dorm." Doc. 73-1 at 1-2 (Price Aff.). Regulations for the Restricted Privilege Dorm provide for, among other things, daily exercise and showers. Doc. 48-1 at 4-5, 7 (REG/SOP 414-01, dated May 16, 2012).

Defendants assert they are entitled to qualified immunity. Doc. 40 at 3; Doc. 71 at 4-5. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (quotation marks and citations omitted).[6] To receive qualified immunity, the

---

[6] "A district court's refusal to address claims possibly barred by qualified immunity effectively denies defendants immunity from suit on those claims." *GJR Investments, Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir.

public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants were acting within the course and scope of their discretionary authority when the incidents complained of occurred. Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show that the defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and citations omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided," (2)

---

1998), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 167-68 (1993), *and Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). Thus, when a defendant raises qualified immunity, a district court must address the merits of qualified immunity even if a plaintiff's claims otherwise fail on the merits. *See, e.g., Collins v. Sch. Bd. of Dade Cty., Fla.*, 981 F.2d 1203, 1204-05 (11th Cir. 1993) ("Defendants are entitled to immediate appeal when a district court denies their motion for summary judgment based on qualified immunity" or reserves ruling on qualified immunity at summary judgment) (citations omitted).

"a broader, clearly established principle that should control the novel facts of the situation," or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208-09 (11th Cir. 2017) (quotation marks and citations omitted). The controlling case law is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." *See id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). The Court of Appeals for the Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210. If the plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241-42).

Plaintiff's claim is under the Eighth Amendment, which protects convicted prisoners from the "unnecessary and wanton infliction of pain" that is "totally without penological justification." *Hope*, 536 U.S. at 737 (quotation marks and

citations omitted). An Eighth Amendment claim includes an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To show the objective component, "the deprivation alleged must be, objectively, sufficiently serious." *Id.* (quotation marks and citations omitted). Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The Constitution does not mandate comfortable prisons," but it imposes restraints on prison officials, for example, not to use excessive force against prisoners, and it requires that prison officials "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]" *Farmer*, 511 U.S. at 832 (quotation marks and citations omitted). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. The living conditions within a correctional facility will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] . . . [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347. "Conditions . . . alone or in combination, may deprive inmates of the minimal civilized measure of life's

necessities. Such conditions could be cruel and unusual under the contemporary standard of decency. . . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id.* To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate. *Id.* at 363. In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986). The court's consideration of whether the totality of a plaintiff's claims amount to conditions which fall below applicable constitutional standards is limited by the Supreme Court's admonishment that

> *[s]ome* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need . . . . To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991) (emphasis in original).

On the subjective component, the "state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (citation omitted).

Deliberate indifference means "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 837-38; *see also Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) ("Proof that the defendant should have perceived the risk, but did not, is insufficient." (citing *Farmer*, 511 U.S. at 838)). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Wilson*, 501 U.S. at 305 ("mere negligence" does not constitute deliberate indifference). Viewing the evidence in the light most favorable to Plaintiff, as the court must do when ruling on a motion for summary judgment, no reasonable juror could find in Plaintiff's favor on his claimed Eighth Amendment violation against the Defendants.

17

## 1. Defendant Karla Jones

Defendant Karla Jones, who was a Warden at Easterling during the time relevant to the complaint, submitted an affidavit regarding the time when Plaintiff was at Easterling. Jones swore "[t]here was no violation of inmate Hammonds Eighth (8th) Amendment Rights while he was assigned to the Restricted Privilege Dormitory." Doc. 40-2 at 2. Karla Jones submitted an additional affidavit asserting Plaintiff's claim as one that he was denied "hygiene articles, inadequate exercises and inadequate ventilation" at "*Ventress* Correctional Facility Restricted Housing Dormitory . . . ."[7] Doc. 71-3 at 1 (emphasis added). In fact, Plaintiff is not complaining about the conditions at Ventress, but rather at Easterling. Jones, who now is Warden at Ventress, goes on:

> Inmates assigned to the Restricted Housing are issued soap, towel, face cloth, toothbrush and clean clothing upon being processed into the cell. He can purchase additional hygiene items if he is not on canteen restriction. Inmates assigned to Restricted Housing cell are afforded the opportunity to exercise out of their cells at a minimum of five (5) hours per week. During his assignment in the Restricted Privilege Dormitory all inmates are afforded one hour of exercise daily. Each one of Ventress [sic] Correctional Facility's Restricted Housing cells has a window for ventilation. Therefore, inmate Hammond's allegation of unconstitutional conditions in the Restricted Privilege Dormitory are false.

---

[7] Defendant Karla Jones is currently listed on the ADOC website as Warden at Ventress Correctional Facility. http://www.doc.state.al.us/FacAddr (last visited Mar. 1, 2018). Jones also submitted an affidavit that does not identify any particular facility but states, "Inmates housed in the Restricted Privilege Dormitory are restricted from general population but afforded basic living conditions." Doc. 44-1 at 1. Defendants also submitted an affidavit from an "ASAIII" from Ventress, indicating that an attached regulation was kept in the usual course of business at Ventress, but the attached regulation is from Easterling. Doc. 44-2 at 1-5.

Doc. 71-3 at 1-2. The affidavit regarding conditions at Ventress is not helpful to resolving the issue regarding conditions at Easterling. Nevertheless, there is no evidence on the record that creates a genuine dispute whether Karla Jones knew Plaintiff suffered inhumane conditions. Other than Plaintiff's general complaint to Karla Jones that she was violating his constitutional rights, the record is devoid of evidence that Plaintiff or anyone else alerted Karla Jones to the alleged inhumane conditions, and nothing in the record suggests Karla Jones knew of the conditions and disregarded the risks of Plaintiff's exposure to them. As the Supreme Court has explained, "[a]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for condemnation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38. No reasonable juror could find in Plaintiff's favor on the subjective component of his Eighth Amendment claim against Karla Jones. Consequently, summary judgment is due to be granted to Defendant Karla Jones. *See Pearson*, 555 U.S. at 232 (defendant entitled to qualified immunity if plaintiff fails to show facts that make out a constitutional violation).

### 2. Defendants Carter, Bryant, Peavy, Dominic Jones, and Teal

Defendant Carter, who was a Warden at Easterling during the time relevant to the complaint, avers that he has no knowledge of Plaintiff's allegations, but he states

"[i]n some cases where it is beyond the control of Easterling officials, some inmates have remained in the Restricted Privilege Dorm beyond their release date due to the lack of institutional bed space." Doc. 40-3 at 1. Carter swears, "I have not knowingly violated any rights of inmate Hammonds." Doc. 40-3 at 2. Defendant Bryant, who was a Correctional Captain at Easterling during the time relevant to the complaint, avers the Restricted Privilege Dorm is not a segregation unit but rather is a management tool "to house all inmates who have violated minor rules into one dormitory so that proper approved sanctions may be imposed efficiently." Doc. 40-4 at 1. Bryant states, among other things, that inmates in the unit exercise each day, and that Bryant has "not violated [Hammond's] constitutional rights." Doc. 40-4 at 2-3. Likewise, Defendant Peavy, who was a Lieutenant, and Defendants Dominic Jones and Teal, who were Sergeants during the time relevant to the complaint, aver that the Restricted Privileges Dorm is not a segregation unit. Docs. 40-5, 40-6, 40-7. Peavy and Tell state that inmates receive exercise daily. Docs. 40-5, 40-7. Peavy, Dominic Jones, and Teal aver that they have not "mistreated inmate Hammonds nor violated any of his constitutional rights." Docs. 40-5, 40-6, 40-7. The record is devoid of evidence that Defendants Carter, Bryant, Peavy, Dominic Jones, or Teal knew about inhumane conditions and disregarded Plaintiff's exposure to them. Based on the undisputed facts, no reasonable juror could find that Defendants Carter,

Bryant, Peavy, Dominic Jones, and Teal were deliberately indifferent to Plaintiff's conditions. *See Farmer*, 511 U.S. at 837-38. Consequently, summary judgment is due to be granted to Defendants Carter, Bryant, Peavy, Dominic Jones, and Teal. *See Pearson*, 555 U.S. at 232.

### 3. Defendant Sconyers

Plaintiff admits that Defendant Sconyers, who was a Warden at Easterling, has retired from the ADOC. Doc. 39. Plaintiff asserted in his complaint that Sconyers ran the Restricted Privilege Dorm, but Plaintiff made no specific allegation against Sconyers regarding inhumane conditions or that Sconyers knew of and disregarded such conditions.[8] Docs. 1, 1-1 at 1. The record is devoid of evidence that Plaintiff alerted Sconyers to the alleged inhumane conditions, and nothing in the record suggests Sconyers knew of the conditions and disregarded Plaintiff's exposure to them. Based on the undisputed facts, no reasonable juror could find that Defendant Sconyers was deliberately indifferent to Plaintiff's living conditions. *See Farmer*, 511 U.S. at 837-38. Consequently, the court, concludes, summary judgment is due to be granted to Sconyers. *See Pearson*, 555 U.S. at 232.

---

[8] The court recognizes that mail sent to Sconyers was returned as undeliverable, Docs. 36, and the record does not include a return receipt card for service by mail on Sconyers or an affidavit from Sconyers. Nevertheless, the Attorney General filed an answer and other documents on behalf of Sconyers. Docs. 37, 40, 43, 44, 48, 50, 69, 71, 73.

### 4. Defendant Davenport

Defendant Davenport was a Warden at Easterling during the time relevant to the complaint. Docs. 48-1, 50-1. Plaintiff makes no particular allegations in the original complaint against Davenport, who was added later as a defendant in this case. Docs. 1, 1-1, 24, 26. In his amended complaint, Plaintiff makes particular allegations against the other named Defendants, but not Davenport, and Plaintiff only generally asserts "the wardens of the institution and the commissioner of the Alabama Department of Corrections failed to address complaint from the plaintiff and other inmates and failed to correct the misconduct of correctional officers, and supervisors that maintains authority over the welfare of the inmates in which the abuse . . . ." Doc. 25 at 9. In the sworn declaration attached to the amended complaint, Plaintiff states he "wrote a complaint to the wardens and the captain that oversees the institution, and also to the Commissioners to see about the situation with ongoing violations and was ignored." Doc. 25-1 at 1. Again, Plaintiff does not identify Davenport by name in the declaration. *Id.* At the end of the statement, Plaintiff identifies by name the other Defendants who allegedly violated his Eighth Amendment rights, but not Davenport. Doc. 25-1 at 2. The letter Plaintiff addressed to Warden C. Davenport at the Commissioner's Office, dated April 28, 2015, and marked April 30, 2015, complains about conditions in C-1, but the letter does not

indicate that Davenport was the person who actually received the letter. Doc. 35-1 at 1-4. As for the conditions themselves, Plaintiff complains in the letter that he was denied exercise, and he states, "We are not allowed to buy personal hy[gi]ene and writing stationery that is allowed at other institutions when inmates is on restriction. We are being deprived of basic human needs. Our rights are being violated by being placed in extrem[e]ly overly restricted conditions and inhumane and unsafe conditions." Doc. 35-1 at 2, 4. Plaintiff does not otherwise elaborate in the letter on what particular conditions are inhumane or unsafe. *Id.* at 1-4. Davenport submitted the regulation governing the Restricted Privilege Dorm, and Davenport submitted an affidavit describing Plaintiff's discipline, but Davenport does not suggest he knew of Plaintiff's allegations regarding the conditions in C-1. Docs. 48-1, 50-1. Based on the undisputed record, nothing suggests that Davenport knew of unsafe or inhumane conditions in C-1 and disregarded Plaintiff's exposure to them. Based on the undisputed facts, no reasonable juror could find that Defendant Davenport was deliberately indifferent to Plaintiff's living conditions. *See Farmer*, 511 U.S. at 837-38. Consequently, the court, concludes, the case is due to be dismissed as to Davenport. *See Pearson*, 555 U.S. at 232.

### 5. Defendant Thomas

Defendant Thomas, who was Commissioner of the ADOC until January 27, 2015, was no longer with the ADOC when some of the relevant events occurred; he avers he delegated decisions about placement of Plaintiff to the Warden at Easterling; he avers he had no day-to-day control over operations at any ADOC facility; and he avers he had no personal knowledge of the matters alleged in Plaintiff's complaint and amended complaint. Doc. 45-1 at 1-2. Based on these undisputed statements, the record includes no evidence that Thomas knew of or disregarded a substantial risk to Plaintiff's health or safety, consequently summary judgment is due to be granted to Thomas. *See Farmer*, 511 U.S. at 837-38; *see also Pearson*, 555 U.S. at 232.

### 6. Plaintiff's Eighth Amendment Claim

Even assuming Defendants received notice of Plaintiff's complaints, no reasonable juror could find that Plaintiff was subjected to conditions of confinement in C-1 that objectively rose to the level of an Eighth Amendment violation. In evaluating an Eighth Amendment claim, the court must consider both the severity and the duration of a prisoner's exposure to a condition. *See Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004) (considering an inmate's exposure to extreme temperatures). Here, while he claims that it was inadequate or not "proper," Plaintiff does not dispute that he received exercise, and he provides no specifics about how

many days he could not buy or have additional hygiene items. Plaintiff's longest stay in C-1 was 27 days, many of his stays were significantly less than 27 days, and the total amount of time he spent in C-1 was 135 days in 10 stays over about 30 months. He complains that the cells were congested, smelled poorly, and if no one was around the toilets could be flushed only once every fifteen minutes. The conditions may have not been comfortable, but "[t]he Constitution does not mandate comfortable prisons." The concludes that the conditions as described in this record were not so extreme as to violate the Constitution. *See Farmer*, 511 U.S. at 832. For example, Plaintiff was not subjected to conditions such as those in *Brooks v. Warden*, 800 F.3d 1295, 1305 (11th Cir. 2015), where an inmate was forced for two days "to lie in direct and extended contact with his own feces without any ability to clean himself, while confined to a hospital bed in maximum security constrains." Plaintiff was not prevented from using the toilet, as was the inmate in *Hope*, 536 U.S. at 738, who was attached to a hitching post for seven hours in the sun and whose "deprivation of bathroom breaks . . . created a risk of particular discomfort and humiliation." Furthermore, Plaintiff asserts the cells are locked with a keypad and chain, but he does not elaborate on how doing so exposes him to risk of injury. *See Farmer*, 511 U.S. at 837 (plaintiff must show disregard of excessive risk to safety); *see also Brown v. Hughes*, 894 F. 2d 1533, 1537 (11th Cir. 1990) ("The known risk

of injury must be a 'strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference."). Summary judgment is due to be granted in favor of the correctional defendants on Plaintiff's claim attacking the physical conditions in the C-1 at Easterling. *See Pearson*, 555 U.S. at 232.

### E. Respondeat Superior

Defendants argue they cannot be held liable under § 1983 for a constitutional violation by their subordinates via a theory of respondeat superior or on the basis of vicarious liability. Doc. 40 at 3, 8; Doc. 45 at 3, 5; *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (doctrine of respondeat superior is inapplicable to § 1983 actions); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (§ 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability); *see also Cottone*, 326 F.3d at 1360; *Kilgo v. Ricks*, 983 F.2d 189, 194 (11th Cir. 1993) (holding the prison commissioner's dismissal was proper because no personal involvement or policy by the department was alleged). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for actions of correctional officials could attach to the supervisory defendants only when they "personally participate[d] in the alleged unconstitutional conduct or when there is a causal connection between [his]

actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360. To establish the requisite causal connection and avoid entry of summary judgment in favor of these supervisory defendants, Plaintiff must present sufficient evidence which would be admissible at trial of either "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," or when a supervisor's "custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (quotations marks and citations omitted) (alterations in original).

Defendant Thomas had no personal involvement in the decisions to place and keep Plaintiff in C-1, or in the conditions of C-1. Similarly, the record does not suggest the Wardens and other Defendants who supervised C-1, or were involved in Plaintiff's placement in C-1, knew of the conditions or Plaintiff's access to hygiene items. A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Plaintiff has not met his burden to show Defendants directed correctional officials to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Plaintiff presents no evidence of obvious, flagrant or rampant abuse of a continuing duration in the face of which

these Defendants failed to take corrective action. Based on the foregoing, summary judgment is due to be granted in favor of Defendants on Plaintiff's claim for relief based on respondeat superior.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Defendants' motion for summary judgment (Docs. 40, 45, 71, 73) be GRANTED.

2. Judgment be GRANTED in favor of all the Defendants.

3. This case be DISMISSED with prejudice.

It is further

ORDERED that on or before March 19, 2018, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a de novo determination by the District Court of factual findings and legal issues covered in

the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done this 5th day of , 2018.

_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE